◼ In the Matter of MADAN G. CHUGH, Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.—Determination unanimously confirmed and petition dismissed without costs. Memorandum: In this CPLR article 78 proceeding, petitioner, Dr. Madan G. Chugh, challenges a determination by the Commissioner of Health finding him guilty of four charges of patient neglect and imposing a $1,000 civil penalty. Petitioner contends that the findings are not supported by substantial evidence and that respondent improperly refused to provide him with the names of witnesses who gave statements to departmental investigators. Neither contention has merit.

The charges arose out of an incident that occurred while the patient was confined in the Downtown Nursing Home in Buffalo on July 17, 1981. The patient was a 91-year-old woman suffering from organic brain syndrome, arteriosclerosis, strokes and kidney disease. Petitioner ordered heat-lamp treatment for bedsores on the patient's back and buttocks. Instead of an ordinary 60-to-75-watt bulb which was generally used in this type of treatment, the L.P.N. on duty mistakenly used an infrared lamp of over 1,000 watts. She propped the patient on her side and placed the lamp 2 to 3 feet away from her back and buttocks and left her unattended for 20 minutes. During that time, the patient rolled over on her back, exposing her upper legs to the lamp at a distance of approximately one foot. Tirath Walia, the shift supervisor, discovered the burns on the patient's legs at approximately 5:15 A.M. Walia telephoned petitioner at approximately 5:30 A.M. to advise him of the injuries and to obtain treatment orders. She testified that she told him that the patient had sustained second degree burns on her thighs and that the area had formed open blisters that were draining. Petitioner told Walia to keep the wounds clean and dry and to apply Neosporin ointment when the blisters broke. Petitioner, who was working as a contract

physician in the emergency room at Sisters of Charity Hospital, made no arrangements to examine the patient or to have her examined by another physician. Maryann Villar, the nursing supervisor on the day shift at the nursing home, made six attempts during the day to reach petitioner by leaving messages with his answering service and with the switchboard operator at the hospital. When she finally reached petitioner at approximately 2:45 P.M. and informed him of the patient's worsening condition, petitioner had the patient transferred to the emergency room at Sisters of Charity Hospital. After he examined her, he had her transferred to the burn unit at Sheehan Emergency Hospital because there were no beds available at Sisters of Charity Hospital and because burn treatment was not available there. The patient was subsequently diagnosed as having second and third degree burns over 5% of her body and died on July 21, 1981. The cause of death was bilateral bronchopneumonia resulting from the trauma of the burns.

The Commissioner sustained the charge of patient neglect, finding specifically (1) that petitioner failed to have the patient medically examined at 5:30 A.M. when he received the phone call advising him that the patient had suffered a burn; (2) that the telephone order he issued to Walia at that time was neither adequate nor appropriate; (3) that he failed to insure that the patient received emergency first aid at 5:30 A.M. and (4) that he subjected the patient to a double transfer from the nursing home to Sisters of Charity Hospital and then to Sheehan Emergency Hospital. Those allegations are supported by substantial evidence. Nurse Walia testified that she informed petitioner that the burns were second degree, characterized by blisters on both sides with fluid draining from them. The evidence supports the conclusion that petitioner should have understood the seriousness of the burns from that description and, at the very least, should have had the patient examined. Respondent submitted expert evidence that a "major" burn includes any burn on a patient with a history of chronic illness or on a patient over the age of 65. It was not disputed that petitioner's response to Nurse Walia's call was to issue an order that the patient's burns be kept dry and that an antibiotic ointment, Neosporin, be applied when the blisters broke. There was overwhelming proof that petitioner's order was negligent and did not provide for the necessary immediate active intervention. The correct response to thermal injuries of this nature is to cool the burn with ice packs. Such treatment was inconsistent with petitioner's order to

keep the burns dry. Thus petitioner's order actually impeded the nurses from applying proper first aid treatment. Moreover, application of Neosporin was contraindicated since that tends to hold in heat and is inappropriate on a patient with a history of kidney disease. With respect to the double transfer, when petitioner was finally reached at approximately 2:45 P.M., he instructed the nurse to send the patient to the emergency room at Sisters of Charity Hospital. When he determined that she needed to be hospitalized, he had her transferred to Sheehan Emergency Hospital. Not only were there no beds available at Sisters of Charity Hospital but there was no treatment available there for a patient with serious burns. As the emergency room physician at Sisters of Charity Hospital petitioner knew or should have known that there were no beds available and should have been aware of the severity of the patient's burns and recognized the need for expert burn treatment. There was expert testimony that the double transfer posed unnecessary risk to the patient.

Petitioner also contends that he was deprived of a fair hearing on these charges because the Department refused to reveal the names of witnesses who had given statements during the course of its investigation. The Department did furnish petitioner with copies of all pertinent statements, redacting the names of the persons making those statements. In addition, petitioner was provided with the unredacted prior statement of any person who appeared as a witness at the hearing. Thus petitioner was denied only disclosure of the identity of persons who did not testify. Public Health Law § 2803-d (6) (f) (iii) requires that the identity of persons making reports of patient neglect be kept confidential. The failure to breach that confidentiality did not deprive defendant of a fair hearing. (Article 78 proceeding transferred by order of Supreme Court, Erie County, Forma, J.) Present—Denman, J. P., Green, Pine, Balio and Davis, JJ.